Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. This is Judge Wilson in Tampa, Judge Lagoa is in Miami, and Judge Carnes is in Montgomery. And we have four appeals that are scheduled for argument this morning. And I see that the council are ready to proceed and we'll begin with our first appeal. I would advise you initially that we're going to hear three appeals. And then we're going to take a 10 minute break before hearing arguments in the last appeal. And so our first argument is the United States of America versus Reginald Brown and Katrina Brown. Valerie Lennon is here for appellant Katrina Brown, and Sarah Sweeney is here for the United States. And Miss Lennon, are you ready to proceed with your argument? I'm ready to proceed. You may. Thank you. May it please the court make sure I'm unmuted. My name is Valerie Lennon and I represent appellant Reginald Brown. Mr. Brown raised four issues in his initial brief. The first of which was the severance and the second was sophisticated means enhancement and fourth was the minor rule reduction. Assuming that the court is apprised of the facts of the case and because I only have five minutes, turning to the first issue, which was the denial of the severance. Mr. Brown actually made three motions to sever. It wasn't until the third motion that he had the benefit of the detailed affidavit from Katrina Brown. The affidavit was important, not just important, but essential to his defense because Miss Brown was the only person who had knowledge of or could testify that Mr. Brown didn't have anything to do with the creation of these invoices with these requests for loan disbursements. And so it was absolutely essential to his defense. Now the second issue is sufficiency of the evidence. In this case, it's important to note that the government, during closing arguments, ultimately admitted that Miss Brown created these invoices herself, that she created these shell companies herself, that she did the research as to what sort of goods and products should be reflected in the invoicing, and that that was all on Katrina Brown. It's also telling from the government's case that there was no testimony from anyone that they had direct communication with Reginald Brown about the creation of these invoices. So the government proceeded on a circumstantial evidence theory against Mr. Brown. So what the court asked the jury to infer was that Mr. Brown knowingly and willfully participated in this conspiracy simply because he accepted checks from the lenders, deposited those checks, and then turned the proceeds back over to Katrina Brown. He didn't just accept the checks. He accepted checks for which he knew he did not, was not entitled, had no legitimate reason to accept, did not. Mr. Brown maintained that he did do work for those invoices. And the jury was entitled to believe that he did. There's certainly no overwhelming evidence he did. It was just his claim. There was nothing to show he did any work, was there? Correct, which was why Miss Brown's testimony under the motion to sever was essential to his defense. It's the only way. Yeah, but she, as I read her affidavit in the proffer, she didn't maintain that he didn't know. He just said he did that because I asked him to. You can ask somebody to aid and abet your crime. That doesn't mean that person is innocent, does it? It doesn't. That's why it would have been helpful to flesh out her testimony on that rather than just what was in the affidavit. She, you know, the government... Did Mr. Brown ask for a hearing on that in her testimony as to what she would testify to? Your Honor, I don't remember off the top of my head. I know there was a hearing on that motion and some debate with the district court about what was in the affidavit was sufficient. But it certainly would have been helpful to have that testimony. And now the government does raise in the answer brief that there were copies of the invoices in with these checks. But again, that's, you know, it's presuming to ask that he should have been aware of what were those invoices were for or what was in them. But according to the Wilner case, that's not enough to establish that he knowingly and willfully participated in this conspiracy. And quickly, because I only have a few seconds left, the sophisticated means enhancement, this court has certainly seen much more sophisticated activity, certainly in credit card fraud cases. And so just depositing those checks and giving the money back to Katrina Brown doesn't rise to that level. Also, as to the minor role reduction, again, most of the vast majority of the criminal activity in this case, accepting the government's case is true, was committed by Katrina Brown, not by Reginald Brown. And if the court does not have any further questions, then I will turn my time over. Thank you. Thank you, Liz Lennon, and you've reserved some time for rebuttal. We will now hear from Mr. Hernandez on behalf of appellate Katrina Brown. Please the court. Council. My name is Jim Hernandez, and I am representing the appellate Katrina Brown. In my initial brief, there are also five issues. One, the absence of a standby council on October 1 at closing argument. The courts not granting the motion for severance. The government's closing argument intended at loss and forfeiture and restitution. On the first issue on October 1, 2019, standby counsel Landis, who had been present throughout the entire trial, called into the clerk of the court and stated that he had the flu and would be dialogue between the district court and appellate Katrina Brown. This dialogue is a document 506. Miss Brown in the dialogue between the court stated that she wanted her present. She stated that she basically felt comfortable with standby counsel and that he was a motivator to her. Mr. Hernandez, given that you don't really have a sixth amendment right to stand by counsel, we would apply harmless error review to this issue. What can you tell us to convince us that there was prejudice to Miss Brown as a result of her failure to court? Yes, your honor. The case that controls in the 11th circuit, I believe, is United States versus Wilson at 979 Fed 3889, 11th circuit 220. Sir, I would point to the prejudice that Miss Brown had in this case. She basically had relied on standby counsel and consulted with him throughout the trial. The order denying the motion for new trial stated she did that. By not having standby counsel present at the time of her close, this was an extreme discomfort to her and it surprised her. You will take a look at document 506. There's no right not to be uncomfortable and there's no right not to be surprised. And what Wilson says is to demonstrate prejudice, Wilson must show that but for standby counsel's absence, the result of his trial would have been different. And Wilson, the standby counsel wasn't there the entire trial. And how has she shown that the result of the entire trial would have been different? She would have been acquitted, but for the fact she didn't feel comfortable without having him there during closing argument. Yes, sir. There are other issues that came up during that closing argument. She had to handle and she could have handled and consulted with Mr. Bell's objection that is in document 506, page 20, in which Mr. Bell basically gave a 404B type objection to part of her argument. She could have had standby counsel present. Of course, if she had had standby counsel present, she could have had standby counsel present. But the question is, how would the outcome of the trial have been different? In other words, you have to argue on the 404B type argument that the ruling would have been different. And if the ruling had been different on that, the jury would have come in with an acquittal. Isn't that what you have to show under Wilson? You have to show prejudice in which the outcome could have been different. The fact that she had- It doesn't count, I'm sorry. You keep changing what Wilson said. He said the results of the trial would have been different. Not could have been, but would have been. Yes, sir. Yes, sir. What I'm stating is, is that whenever the Feretta hearing took place, whenever the district court judge issued order on the duties of standby counsel, there was nothing in those orders or in that Feretta hearing that stated that standby counsel was not required. What that dialogue took place on October 1st between the district court judge and Ms. Brown, that is when Ms. Brown first realized that standby counsel could be absent. All right. But you haven't argued, or if you did, I missed it, that there was an invalid waiver of counsel or invalid assertion, actually, of Feretta rights. That if she had known that standby counsel didn't have to be present at every turn of the trial, that she wouldn't have- she would have insisted on appointed counsel. I don't- You didn't argue that in your brief. I did not, sir. I argued that due to standby counsel not being present, that the- I'm arguing under Wilson, the prejudice that was toward her, sir. You take even a trained attorney in a trial, if a member of that defense team is taken away from him that he's consulted with throughout the trial, that could affect the quality of the closing argument. Also, the issues that were brought up in three- issue three about the improper argument by the government, standby counsel could have counseled her as far as the arguments by the government coming forward and being possibly improper. Thank you, Mr. Hernandez. We have your argument, and you've reserved some time for rebuttal, and we will hear from the government. Ms. Sweeney? Good morning, Your Honors. Counsel, may it please the court, Sarah Sweeney on behalf of the United States. I'll begin with Reginald Brown's severance argument, and the affidavit that Ms. Brown submitted was not significantly exculpatory as to Reginald Brown here, and I can discuss in detail the- in her argument, Ms. Lennon specifically relies on that she was- Katrina Brown was the one person who could testify that Reginald Brown hadn't prepared the invoices, but I do think it's important to note that was never the United States theory, and in fact, if you look at the indictment, the indictment in the manner and means section specifically says that Katrina Brown prepared and submitted these invoices, and so it was never the United States theory that Reginald Brown had done that, and regardless, that evidence wasn't significantly exculpatory to him. It was more of a double-edged sword for- because why was he getting money if he had not prepared these invoices, and so that was not actually helpful to him as the district court found, and I would point specifically to the Machado case. I would refer the panel to that. That's cited in both our brief and in Reginald Brown's brief, and in that case, a co-defendant wanted to testify that he had not conspired with one of the other defendants charged in the case, and that didn't really matter because the government's theory wasn't that the two of them had had spoken to each other or strongly worked together in the conspiracy, but that both of them were involved in other ways, and because of the complex nature of this trial and of this conspiracy, just as in Machado, the district court didn't abuse its discretion by not granting severance for Mr. Brown. Ms. Lennon also mentioned that it would have been helpful to have the flesh out the affidavit. I think it's- I do want to point out, though, that what the procedural history of this case is that almost a year before this third motion to sever, Reginald Brown had filed a motion to sever on the same grounds, claiming that Katrina Brown would testify for him, and the district court denied it on the ground that the testimony wasn't sufficiently developed, so to say that over a year later that he needed more notice, that this testimony needed to be sufficiently developed, I don't think that that's sufficient to overcome the interest in judicial economy and administration and the untimeliness of his motion when the court found that he could have developed these facts before and just had simply failed to do so. So, Ms. Sweeney, my understanding is that the jury heard evidence that Katrina Brown tearfully confessed to some of these crimes? I don't- I don't agree that it was testimony, Your Honor. Mr. Brown's counsel in his opening said that, and this really goes more to Katrina Brown's severance issue here, that she said that these- the trials needed to be severed because they were mutually antagonistic defenses, and then- yes, Reginald Brown's counsel said that Katrina Brown had tearfully confessed and that Reginald Brown was going to testify to that fact, and then that didn't end up happening. Mr. Brown didn't take the stand at all, and so turning to the mutually antagonistic defense, the way that is- is viewed by this court and by the Supreme Court, those of course are not prejudicial per se, and even though that was said, other courts have found that that kind of statement in opening doesn't specifically violate any right of the defendant and doesn't show compelling prejudice that would- would mean that a severance needed to be granted because of mutually antagonistic defenses. So- so there was no evidence at the trial that she tearfully confessed? There was- was said only in opening, your honor, and the jury was repeatedly instructed that the statements of the lawyers were not evidence. Was there an objection? No, your honor, there was not. Oh, I'm sorry, let me- let me revise that, your honor. About four days later- so opening takes place four days past- about four days later, Ms. Brown does object at that point and ask for- you know, for that- for a mistrial based on that statement in opening, but the court found that that was simply too late for that to have happened and that- that evidence, if it had been introduced, would have been admissible. There was nothing that was inadmissible about it. Were you trial counsel in the case? No, your honor, I was not. Okay, do you know whether or not stand-by counsel for Ms. Brown was present throughout the entire course of the proceedings except for the closing argument? He was absent for a few minutes two other times, but he was present during opening statements, your honor. Was he seated at counsel table with her? I- the record doesn't show that specifically. The record shows that Katrina Brown had the ability to choose whether he sat with her or sat behind her. That's in the- the- the district court told Ms. Brown that, and it's in the order appointing counsel. I believe, though, they probably sat next to each other because the- the district court did find that they consulted regularly. Okay, I guess my concern is that the jury see stand-by counsel with Ms. Brown during the entire proceedings except for closing argument. Does the record- because the jury maybe could draw some conclusions about the absence of counsel during what we've said is a crucial phase of a criminal trial. I do believe they otherwise saw them together throughout the trial, your honor. I wouldn't- I wouldn't say there's any evidence that didn't happen. I believe they were together and they to the jury, but regardless, the jury did know that Katrina Brown was representing herself, and they had been told that several times, and- and they- so they knew that she was there representing herself, and so the stand- stand-by counsel wasn't introduced to them as a- a particularly relevant player in the trial, and so his absence I don't think would have reflected anything to them. Regardless- Can I ask a question? If- and I'm not sure that the record reflects this or it shows this, but if there were sidebars, did- normally during a sidebar, if you have stand-by counsel, stand-by counsel is the one that goes sidebar. Do you know if that happens here? I know he went to sidebar at least a few times, your honor, because in one of the instances he was up there discussing a personal medical issue that he was experiencing, that was on the- the third day of trial, but the first day in front of the district court judge, because jury selection was handled by a magistrate judge, so you can see that at least in that sidebar, he was present at- at- at sidebar stand-by counsel was. I- I- I want to continue though with the- and I think this kind of goes to Mr. Hernandez's argument, you know, that perhaps Ms. Brown in some way relied on stand-by counsel and I do think that issue is waived because I don't think it was raised in the initial brief, and I think in the reply brief, Ms. Brown expressly disclaimed any- any issue with her waiver, but even assuming that issue existed, here she had plenty of notice about how stand-by counsel was going to be functioning, that he- she didn't have an absolute right to his presence, and Mr. Hernandez acknowledged correctly that she certainly learned that by the first day of trial- the third day of trial, the first day of evidence, if not before, and regardless, when closings were beginning and- and stand-by counsel was not present, the district court- court told Ms. Brown, if you tell me you don't- you- you want your stand-by counsel to present your closing argument, I have to decide what I will do at that point, so at the point that Ms. Brown knew that stand-by counsel wasn't going to be present, if she felt that that was going to impact her desire to continue to represent herself and to continue to waive her rights to counsel, she had the opportunity to revoke- to say, I want to be represented by counsel again, I want counsel to present closing argument, I want counsel to handle objections to these other closings, and she did not take that opportunity, and- and so without doing that, I think it's an intelligent choice that any of these things that could have happened or that could have been in the jury's mind had any actionable impact on her express waiver of her right to counsel and her desire to represent herself. And then I just- I will briefly address the- I'll- I'll stick with Ms. Brown at this point and address the- the taxpayer argument, because Mr. Hernandez did mention that- that- that their theory is that that had some impact with the absence of stand-by counsel, but the counsel- there- Mr. Reginald Brown was a counsel defendant, and his counsel didn't object to those statements in closing, so I do think it's very speculative that even had stand-by counsel been present, that an objection would have been lodged at that point. Also, the references in closing, although they were inaccurate because they told the jury that the- the loan was funded by taxpayers rather than guaranteed by them, in light of the entirety of the trial, in light of the fact that the United States had correctly described the loan in its initial- in its evidence against Ms. Brown, there's simply no harm from that statement, so I don't think that it can supply any kind of prejudice or harm related to the absence of stand-by counsel. And then I will turn to the sophisticated means argument that Mr. Brown raised, which is the- the guideline says that if shell companies are used, that is typically considered to be what happened here. Mr. Brown intentionally engaged in the use of shell companies to receive this money. He opened bank accounts for those shell companies where he was the sole owner of those accounts, and every transfer of money out of those shell company bank accounts was authorized by him. If you- if you look at the checks that were written and the cash that was withdrawn from the counter, it's always him signing those documents, so he intentionally engaged in the use of shell companies to hide transactions, and that's precisely what the sophisticated means enhancement is meant to apply to, and in any event, it wasn't a clear error for the district court to apply it here. I- I believe I touched on all the arguments that my colleagues mentioned in their arguments, but if there are any other issues that the- the court is concerned about, I'd be happy to address them. I think we have your argument, Ms. Sweeney. Thank you. Thank you, Your Honor. And Ms. Lennon, you have reserved some time for rebuttal. Making sure I'm unmuted here. May it please the court, just quickly on rebuttal, two points. As for the severance and the timing of the affidavit and the third motion for severance, Mr. Brown and Ms. Brown's interests were already adverse at this point. They'd already asked the court to sever the trials on that basis. There are any number of reasons that I can think of as to why co-defendants would not get together and try to see what kind of testimony one would offer for the other. And as for timeliness of that motion, you know, Mr. Brown's due process right to a full and fair opportunity to defend these charges against him has got to be paramount to any artificially imposed deadline, and I respect judicial economy and things like that, it's really got to come first. And then finally, sophisticated means, the government, Ms. Sweeney, cited that the creation of the shell companies. Well, certainly the government admitted in closing that Ms. Brown created those shell companies. Sure, Mr. Brown created the bank accounts, but it's but one factor that the court was to look at. That's not the sole factor. You know, Mr. Brown didn't have any decision-making authority here. He didn't have any influence over the decision-making authority that happened in this case. And so that's just one of the many reasons that I would ask the court to reverse that ruling on the sophisticated means enhancement. And if there are no further questions, thank you very much. Thank you, Ms. Lennon. And Mr. Hernandez, you have reserved some time for rebuttal. Yes, Your Honor, I would go to the issue of severance. Ms. Brown's original motion for severance was at document 66, pages 2 and 3. Mr. Brown's original motion for severance was at document 59, page 35. Both of them stated in the motions for severance that there would be stated that Ms. Katrina Brown had gone to Reginald Brown and tearfully confessed to putting in fraudulent vouchers. The defense counsel for Mr. Brown stated that Reginald Brown would testify to that. Also, the defense counsel for Reginald Brown then went into facts that basically stated that Ms. Brown's, the evidence was against Ms. Brown, that there was a mountain of evidence against Ms. Brown. I'm sorry, counsel, I don't know where you're going with this. You're saying that your client, or who's your client now, made statements that were antagonistic to Ms. Brown's defense and that harmed Ms. Brown. How does that help your point? My client is Ms. Brown, Your Honor. Oh, I'm sorry. I'm sorry. Yes, sir. And anyhow, Mr. Brown's counsel... It would help if they had different last names. I apologize. Yes, sir. Yes, sir. Mr. Brown's counsel, Mr. Bell, further went into it. And all through the case, he also, in closing, went into the various aspects that Ms. Brown had basically done the majority of the fraud. He used the term mountain of evidence. Yeah, but didn't Zaffiro put an end to the mutually antagonistic defense grounds for severance? I don't see how it could be any stronger than the Supreme Court was in that case. Your Honor, this case is basically different factually in that the defense counsel for Ms. Brown in the opening and during the close basically promised the jury that Mr. Brown would testify that was not done. Also, then what you should have done is move to have those statements excluded and the jury instructed to disregard. Ms. Brown did give a speaking objection in which amounted to a motion for mistrial during the closing argument, sir, and that there was a dialogue between the court and Ms. Brown on whether the cases should have been severed. And at that time, Ms. Brown stated to the court that again, that normally the cases would be severed in this matter with the Code Defense Counsel acting like a additional prosecutor. Yeah, but that was Zaffiro, except in Zaffiro, the evidence was actually introduced, which is a lot more harmful than just statements, which the jury is ultimately instructed to disregard. It seems to me like you're blending both the antagonistic defense and he made statements which weren't backed up by evidence. But when it comes in terms of the damage from mutually antagonistic defenses, one in which evidence is actually admitted by a codefendant that harms the defendant is a lot more damaging than just statements that Code Defendant's Counsel makes the jury is ultimately instructed to disregard. What's what am I missing there? Your Honor, I'm trying to argue that the blankenship standards have been met. The United States v. Blankenship 382, Fed 3rd, 1110, 11th Circuit, 2004. And that the defendant demonstrated that a joint trial prejudiced her and that severance was the proper remedy for that prejudice, sir. And that basically a substantial constitutional right of fair trial between an impartial jury was not given to her due to that statement and that she did address it and object to it at close due to the Mr. Brown's statements throughout opening and close, sir. I think we have your argument, Mr. Hernandez. Your Honor. And I know Mr. Hernandez and Ms. Lennon that you were both appointed by the court to represent the appellants in this case and the court thanks you for your service. Thank you.